UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A.T.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MARTIN O'MALLEY,<br><br>　　　　Defendant. | Case No. 22-cv-07189-VKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 17 |

Plaintiff A.T. [1] appeals from a final decision of the Commissioner of Social Security ("the Commissioner") [2] denying her applications for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423 *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* A.T. contends that the administrative law judge ("ALJ") erred by: (1) improperly evaluating the opinions of her medical sources; (2) improperly discounting her subjective statements about her symptoms; and (3) incorrectly determining her residual functional capacity ("RFC").

The parties have filed cross-motions for summary judgment. Dkt. Nos. 15, 17. The matter was submitted without oral argument. *See* Civil L.R. 7-1(b). Upon consideration of the moving and responding papers and the relevant evidence of record, the Court grants A.T.'s motion for

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil L.R. 5-1(c)(5)(B)(i).

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley, Commissioner of Social Security, is substituted as defendant in place of Kilolo Kijakazi.

summary judgment and denies the Commissioner's cross-motion for summary judgment.[3]

## I.     BACKGROUND

A.T. filed applications for disability insurance benefits and supplemental security income on November 20, 2018, when she was 26 years old, alleging that she has been disabled since November 13, 2018 due to post-traumatic stress disorder ("PTSD") with panic attacks, agoraphobia, generalized anxiety disorder, major depressive disorder, insomnia, and migraines. AR 23, 73, 74, 88.[4]

As a child, A.T. suffered physical and sexual abuse. *See* AR 54, 445, 470, 546, 567, 612. A.T. attended high school through the 11th grade, but dropped out in the 12th grade. AR 45; *see also* AR 329. She has not obtained her GED. AR 45. A.T. has prior work as a fast-food worker and a fast-food services manager. AR 31, 45-50, 345-50.

A.T.'s applications were denied initially and on reconsideration. AR 101-02, 131-32. An ALJ held a hearing and subsequently issued an unfavorable decision on August 23, 2021. AR 23-33. The ALJ found that A.T. met the insured status requirements of the Act through June 20, 2022 and that she did not engage in substantial gainful activity since the alleged onset of disability on November 13, 2018. AR 25. He also found that A.T. had the following severe impairments: "bipolar disorder;[5] PTSD; unspecified anxiety disorder; ADHD; [and] cannabis abuse." AR 26. The ALJ noted that A.T. had class III obesity, migraine headaches, asthma, and mild obstructive sleep apnea, but concluded that these impairments were not severe. AR 26. The ALJ concluded that A.T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's regulations. AR 26-27.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 12.

[4] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 14.

[5] It is unclear why the ALJ included bipolar disorder in this list, as A.T. did not claim to have this condition. However, the Court notes that depression and bipolar disorder are included in the same listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04; *see also* AR 101 (application for benefits listing a primary diagnosis of "depressive, bipolar, and related disorders").

The ALJ determined that A.T. had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "[S]he is able to carry out simple, routine, and repetitive tasks and may make simple work-related decisions. She may only work in isolation, meaning other individuals may be present in the general vicinity from time to time (e.g., in a commercial office building during a graveyard shift where there may be some individuals around like security), but where she would not be required to interact with others. She can have no public contact and only occasional contact with supervisors. She can perform low stress work, which is defined as no work requiring confrontation, conflict resolution, mentoring, or supervision as part of her job duties." AR 28. Based on this RFC, the ALJ concluded that A.T. could not perform her past relevant work, but was able to perform other jobs existing in significant numbers in the national economy, including routing clerk, commercial cleaner, and conveyor feeder. AR 32. Accordingly, the ALJ concluded that A.T. was not disabled, as defined by the Act, from the alleged onset date of November 13, 2018 through the date of the decision on August 23, 2021. AR 33.

The Appeals Council denied A.T.'s request for review of the ALJ's decision. AR 1-5. A.T. then filed the present action seeking judicial review of the decision denying her applications for benefits. *See* Dkt. No. 1.

## II.  LEGAL STANDARD

This Court has the authority to review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16; *Morgan*, 169 F.3d at 599.

**III.   DISCUSSION**

A.T. contends that the ALJ erred by (1) improperly evaluating the opinions of her treating providers and of the state agency medical consultants; (2) improperly discounting her subjective statements about her symptoms; and (3) incorrectly determining her RFC.

**A.    Medical Opinions**

A.T. claims that the ALJ erred by finding the opinions of Carrie Whiting, PA-C and Emily Caveza, PA-C unpersuasive and by relying on the opinions of two state agency consultants. Dkt. No. 15 at 13-20.

Under the regulations that apply to A.T.'s applications,[6] the ALJ must evaluate the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c. The first two factors are considered the most important, and the ALJ is required to explicitly address them in his or her decision. *Id.* § 404.1520c(b)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id.*; *see Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be

---

[6] Because the regulations regarding disability insurance benefits applications and supplemental security income applications are nearly identical, for simplicity this order cites only to the regulations pertaining to disability insurance benefits applications.

4

supported by substantial evidence. *Woods*, 32 F.4th at 792.

### 1. Physician Assistants Whiting and Caveza

A.T. argues that the ALJ erred by discounting the opinions of two of her treating providers, Carrie Whiting, PA-C and Emily Caveza, PA-C, regarding her mental impairments. Dkt. No. 15 at 13-14. The Court agrees.

#### a. Summary of Opinions

Ms. Whiting and Ms. Caveza are both physician assistants who provided psychiatric treatment to A.T. on a monthly or bi-monthly basis. AR 30; *see also* AR 492-96, 525-29 (Whiting opinions); AR 744-48 (Caveza opinion).

In January 2019, Ms. Whiting prepared a written evaluation of A.T.'s mental health after having treated her since May 2018. AR 492-96, 525. With respect to A.T.'s current mental status, Ms. Whiting noted that A.T. had normal appearance and behavior; mildly impaired concentration and memory, but otherwise normal cognitive functioning; mildly depressed mood and blunted affect; normal perception; and normal thought process. While Ms. Whiting noted that A.T. had a "good" capacity in several areas of functionality, she also noted that A.T. had only a "fair" capacity in other areas. Specifically, Ms. Whiting opined that A.T.'s "capacity to perform . . . is impaired" with respect to her ability to "[u]nderstand, remember and carry out complex instructions," "[m]aintain concentration, attention and persistence," "[p]erform activities with a schedule and maintain regular attendance," "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," and "[r]espond appropriately to changes in a work setting." AR 495. She reported that A.T. suffered from "chronic PTSD, agoraphobia with panic disorder, night terrors, [and] insomnia." AR 492. Ms. Whiting summarized A.T.'s treatment and prognosis as follows: "Depression has lessened and patient [is] coping more with actual trauma and symptoms of PTSD. Patient [is] progressing well in treatment to learn coping skills for anxiety[,] but still struggles with agoraphobia." AR 494.

Ms. Whiting prepared another, more detailed, written evaluation in January 2020, after having treated A.T. for approximately 20 months. AR 525-29. Ms. Whiting noted that A.T.'s mood was depressed, with persistent or generalized anxiety, abnormally blunt affect, feelings of

worthlessness, and irritability.  AR 526.  She also noted that A.T. had difficulty thinking or concentrating, was easily distracted, had "flight of ideas," and poor immediate and remote memory.  AR 526.  Ms. Whiting identified symptoms of fear and paranoia, such as intrusive recollections of a traumatic experience, suspiciousness, persistent irrational fears, recurrent panic attacks, and vigilance and scanning.  AR 526.  In addition, she observed that A.T. displayed anhedonia or pervasive loss of interests, appetite disturbances, catatonia or other grossly disorganized behavior, decreased energy, both pressured and slowed speech, and social withdrawal and isolation.  AR 526.  Ms. Whiting noted that A.T. experienced both decreased and excessive sleep, and suicidal ideation, as well as past suicide attempts.  AR 526.  As of January 2020, Ms. Whiting reported diagnoses of major depressive disorder, recurrent; agoraphobia with panic disorder; chronic PTSD; and attention deficit hyperactivity disorder—inattentive type.  AR 525.  Ms. Whiting remarked that A.T. has "[s]evere anxiety in crowds of people and stores, problems with anxiety and depression leading to inability to hold a job."  AR 525.  She identified several clinical findings supporting these diagnoses, including A.T.'s scores on three assessments: PHQ-9, GAD-7, and ASRS v.1.1 Adult ADHD scale.  AR 527.  Ms. Whiting also assessed A.T. as having "marked" limitations in many functional areas, and estimated that A.T. was likely to be absent from work more than three times per month due to her mental impairments or treatment.  AR 528-29.  She opined that A.T.'s diagnoses and limitations were expected to last at least 12 months.  AR 526.

      Ms. Caveza began treating A.T. in March 2020.  AR 588, 744.  In June 2021, Ms. Caveza prepared a detailed written evaluation of A.T.'s mental health.  AR 744-48.  Ms. Caveza reported the same diagnoses as Ms. Whiting reported.  AR 744.  She remarked that A.T. experiences "anxiety when in public," panic attacks, avolition, and anhedonia.  AR 746.  Although Ms. Caveza identified fewer signs and symptoms of impairment than Ms. Whiting did in her January 2020 evaluation, *see* AR 745, like Ms. Whiting, Ms. Caveza assessed A.T. as having "marked" limitations in many functional areas, and estimated that A.T. was likely to be absent from work more than three times per month due to her mental impairments or treatment, *see* AR 747.  She also opined that A.T.'s diagnoses and limitations were expected to last at least 12 months.  AR

6

745.

The ALJ found Ms. Whiting's January 2020 opinion and Ms. Caveza's June 2021 opinion "unpersuasive" because they were "neither supported by nor consistent with contemporaneous treatment records." AR 30. The ALJ explained that the providers' treatment records "demonstrate that the claimant generally reports improved symptoms with medication, including better sleep, fewer nightmares, improved anxiety with Lorazepam and propranolol, and improved depressive symptoms with Pristiq and later Wellbutrin and Prozac" and that "mental status findings in treatment consistently demonstrate good concentration, good judgment and insight, and logical, linear, and goal-directed thought processes." AR 30. Conversely, the ALJ found Ms. Whiting's January 2019 opinion "more persuasive" because it was "consistent with the mental status findings in treatment and with the claimant's statements regarding her overall improvement with treatment." AR 30.

### b. Analysis

A.T. argues that the ALJ's analysis of Ms. Whiting's and Ms. Caveza's opinions was flawed because he (1) did not provide an explanation for his conclusion that their opinions were not supported, *see* Dkt. No. 15 at 14, (2) incorrectly concluded that A.T.'s treatment records showed a pattern of sustained improvement, *see id.* at 16, (3) ignored evidence in the record that supported Ms. Whiting's and Ms. Caveza's opinions, *see id.*, and (4) misinterpreted Ms. Whiting's 2019 opinion, *see id.* at 18.

The Court disagrees with A.T.'s first contention—that the ALJ did not provide an explanation for his conclusion that Ms. Whiting's and Ms. Caveza's opinions were not supported by their treatment records. The ALJ did provide *an* explanation for his conclusion. *See* AR 30. However, the Court agrees with A.T.'s other three arguments, as the explanation the ALJ provided for discounting Ms. Whiting's and Ms. Caveza's opinions is not supported by substantial evidence.

The evaluation of medical opinions must be based on a "holistic view of the record." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). A few positive observations do not render a medical professional's diagnosis unsupported. *Smith v. Kijakazi*, 14 F.4th 1108, 1115

(9th Cir. 2021) ("Physician reports of improvement are [] not sufficient to undermine the repeated diagnosis of the alleged mental health conditions.") (cleaned up). The symptoms of mental health conditions often "wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, reports of improvement must be examined in context—a relative improvement in a claimant's symptoms may not mean they are no longer disabled. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the ALJ cited several instances where A.T. reported improved symptoms or positive responses to medications. AR 30 (citing AR 504, 590-91, 598-99, 612, 620, 627, 696, 709); *see also* AR 504 (April 9, 2019 treatment note stating: "'I've doing really good.' [A.T.] states she is doing really well on her medication."); AR 598 (May 7, 2020 treatment note stating: "'I've been doing alright.' . . . [A.T.] reports she is feeling better after increasing the dose. She states 'I am still depressed but I do feel better. I feel better about myself.'"). However, "the examples an ALJ chooses 'must *in fact* constitute examples of a broader development.'" *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Garrison*, 759 F.3d at 1018). To the extent the ALJ concluded that the cited examples constitute a broader positive change in A.T.'s condition, the record does not support this conclusion.

A.T.'s medical records, when viewed as a whole, reveal instances of improvement interspersed with reports of worsening symptoms, problems with medications, and other setbacks in her progress. *See, e.g.*, AR 540, 563, 594, 632, 640, 644, 648, 663, 666, 678, 693, 699, 709; *see also* AR 540 (November 7, 2019 treatment note stating: "[depression r]elated symptoms are uncontrolled. . . . The patient reports functioning as extremely difficult."); AR 594 (April 21, 2020 treatment note stating: "'I've been doing okay.' [but also] [A.T.] reports continued symptoms of depression. She has not noticed an improvement with mood with the Wellbutrin."); AR 632

8

(October 16, 2020 treatment note stating: "'I don't really see a difference with the pills and how they are affecting me. I'm still sad.'"); AR 640 (January 19, 2021 treatment note stating: "[A.T.] continues to have daily anxiety and she does not feel hydrazine is helping as much as it did before."); AR 648 (February 23, 2021 treatment note stating: "'I feel like my medication gives me a boost in the morning, but I'm still sad. Nothing fixes my sadness.'"). The ALJ also appeared to overlook Ms. Caveza's report in her January 2020 opinion that A.T. had scored 22 on the PHQ-9 and 18 on the GAD-7 questionnaires. AR 527. These tests are used to measure the severity of, respectively, depression and anxiety. *See Crystal L. v. Kijakazi*, No. 22-CV-05180-TSH, 2023 WL 8101916, at *6 n.5 (N.D. Cal. Nov. 21, 2023). The scores reported in Ms. Caveza's January 2020 opinion indicate severe depression and severe anxiety. A.T.'s medical records show that she scored similarly on other occasions. *See* AR 578 (PHQ-9 score of 18 on September 13, 2018); AR 540-41 (PHQ-9 score of 25 on November 7, 2019). It was error for the ALJ to "'cherry-pick" treatment records that showed positive developments in A.T.'s condition without also considering treatment records that reflected persistence or worsening of A.T.'s symptoms. *Garrison*, 759 F.3d at 1018 (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *see also Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *13 (N.D. Cal. Sept. 19, 2018) ("The fact that plaintiff 'sounded less depressed' on a few occasions does not mean that she was symptom-free or that she was not disabled.").

The ALJ also relied on treatment records finding that A.T. had normal "mental status findings." AR 30. Both Ms. Whiting and Ms. Caveza reported that A.T.'s depression, agoraphobia, and PTSD manifested themselves in numerous ways, including "depressed mood," "persistent or generalized anxiety," "intrusive recollections of a traumatic experience," "recurrent panic attacks," "anhedonia/pervasive loss of interests," and "social withdrawal or isolation." *See* AR 492-96, 525-29, 744-48. But the fact that A.T. demonstrated normal concentration, judgment, or thought processes does not necessarily call into question any of her providers' assessments. *See Rule v. Saul*, 859 F. App'x 754 (9th Cir. 2021) (fact that "[claimant's] thought processes, memory, and concentration were within normal limits did not contradict [provider's] conclusions that [claimant] was markedly impaired in her ability to maintain a schedule, communicate with others

9

in a work setting, or plan independently" and "were consistent with [provider's] findings that [claimant] was depressed, anxious, and distractible"); *see also Bass v. Berryhill*, No. 18-CV-07053-DMR, 2020 WL 1531324, at *7 (N.D. Cal. Mar. 31, 2020) ("[T]he existence of some normal mental status exams is not enough on its own to discount [a provider's] opinion."); *Kayleen N. v. Kijakazi*, No. 1:20-CV-03131-JTR, 2021 WL 5238780, at *4 (E.D. Wash. July 29, 2021) ("While the ALJ was correct that the record did contain a number of normal or mostly normal mental status exams, the ALJ's conclusion that Plaintiff's mental health symptoms were generally stable is not supported.").

The ALJ also failed to consider whether Ms. Whiting's and Ms. Caveza's opinions and treatment notes are consistent with the observations of A.T.'s other providers. For example, on September 13, 2018, two months before the alleged onset of disability, A.T. visited Churn Creek Healthcare to establish care with a new primary care physician, Dr. Christine LiWanPo. AR 577-81. Dr. LiWanPo noted diagnoses of "[a]nxiety disorder, unspecified . . . chronic" and "[d]epression . . . chronic" in her initial assessment of A.T. AR 580. A.T. also scored an 18 on the PHQ-9 at this appointment, indicating "[m]oderately severe depression." AR 580. A.T. continued to report significant mental health symptoms to Dr. LiWanPo during later visits. Dr. LiWanPo's treatment notes consistently document A.T.'s anxiety and depression and state that these conditions make it "very difficult" for A.T. to function on numerous occasions. *See* AR 563 (March 14, 2019); AR 559 (April 11, 2019); AR 546 (August 22, 2019); AR 540 (November 7, 2019); AR 535 (June 18, 2020). On March 14, 2019, A.T. told Dr. LiWanPo that she had been experiencing suicidal ideation, "was looking up how to use a drug to end her life," and her fiancé found "letters saying 'goodbye.'" AR 563. And on November 11, 2019, A.T. scored 25 on the PHQ-9, indicating "[s]evere depression," and reported that functioning was "extremely difficult." AR 544.

Finally, as A.T. points out, the ALJ appears to have misinterpreted Ms. Whiting's 2019 opinion. The ALJ stated that Ms. Whiting assessed A.T. "to have fair to good capacity in all identified areas of mental functioning." AR 30. However, the ALJ did not recognize that the assessment form Ms. Whiting used defined "fair" to mean that "[t]he evidence supports the

10

conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." AR 495. Under this definition, Ms. Whiting's assessment of A.T.'s functioning in many areas as "fair," does not mean that A.T. was not impaired, nor is it inconsistent with Ms. Whiting's later assessment—made after another year of treating and observing her—that A.T. had "marked" limitations in many areas. *See* AR 528.

\* \* \*

In sum, the ALJ's stated reasons for discounting Ms. Whiting's and Ms. Caveza's opinions as "unpersuasive" are not supported by substantial evidence.

### 2. State Agency Consultants

A.T. argues that the ALJ erred by relying on the opinions of two state agency consultants who did not examine her. The Court does not agree.

#### a. Summary of Opinions

The ALJ also considered the opinions of two state agency psychological consultants who reviewed A.T.'s applications for benefits. AR 31; *see also* AR 80-81, 109-10 (state agency consultant opinions). The state agency consultants—who reviewed A.T.'s medical records in January and June of 2019—opined that A.T.'s symptoms were improving and that she would be capable of "simple work in [a] low contact setting." *See* AR 81 ("[N]otes indicate improvement of all [diagnoses] with meds, which the [claimant] does not take consistently. . . . Expect continued improvement with ongoing treatment[,] should be capable of simple work in low contact setting by Nov[ember] 2019."); AR 110 ("Updated findings actually showed improved [mental status exams] w/ meds compliance[,] but affirmation of [initial RFC] appears appropriate.").

The ALJ found the state agency consultants' opinions "generally persuasive insofar as they found the claimant capable of simple work in a low contact setting within 12 months of the alleged onset." AR 31. He claimed that the consultants' opinions were "consistent with and supported by the claimant's treatment records, which demonstrate that she has had a good response to medication with some adjustments, as well as to counseling" and that "the claimant's providers have indicated that her symptoms are stable and controlled, consistent with largely unremarkable mental status observations." AR 31.

**b.      Analysis**

A.T. argues that the ALJ erred in relying on the state agency consultants because (1) they made predictions about how A.T. would function in the future, rather than opining on her functioning at the time of their evaluations, and (2) because the opinions of non-examining medical sources, standing alone, are not substantial evidence. Dkt. No. 15 at 19-20. Neither of these arguments is persuasive.

First, A.T. accuses the state agency consultants of "speculating" about her ability to function in the future. Dkt. No. 15 at 19. While the consultants did offer opinions about A.T.'s ability to return to work 12 months after her alleged onset of disability, these opinions were based on a review of the medical records included with her applications for benefits. *See* AR 80-81, 109-10. This is not unusual. In order for a claimant to be eligible for either disability insurance benefits or supplemental security income, her disability "must have lasted or must be expected to last for a continuous period of at least 12 months," or be expected to result in death. *See* 20 C.F.R. § 404.1509 (describing the "duration requirement"). Because of this, medical professional must sometimes make predictions about a claimant's future functioning in order to opine on whether the claimant is disabled and eligible for benefits. Indeed, both Ms. Whiting and Ms. Caveza made such predictions as well. *See* AR 526, 745 (both stating that A.T.'s "diagnoses and limitations [are] expected to last at least 12 months"). There was nothing improper about nature of the state agency consultants' assessments in this regard.

Second, A.T. argues that opinions of non-examining medical sources, standing alone, cannot be substantial evidence. Dkt. No. 15 at 19. This is not accurate. Under current regulations, no medical opinion is entitled to "any specific evidentiary weight." 20 C.F.R. § 404.1520c(a). Rather, the ALJ is directed to weigh the source's relationship with the claimant, among other factors, while determining whether the source is persuasive or nor. *Id.* § 1520c(c)(3).

*  *  *

A.T. has not identified an error in the ALJ's consideration of the state agency consultants' opinions.

### B. Subjective Testimony

A.T. argues that the ALJ erred by discounting her own subjective testimony. Dkt. No. 15 at 20-22.

An ALJ is not "required to believe every allegation" of impairment. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (cleaned up). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*. That is, the ALJ must make an assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Id*. At the second step, "a claimant is *not* required to show that [her] medically determinable impairment could reasonably be expected to cause the severity of the symptom [she has] alleged, and is *not* required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Ferguson v. O'Malley*, No. 21-35412, — F.4th —, 2024 WL 1103364, at *6 (9th Cir. Mar. 14, 2024) (cleaned up, emphasis in original). A reviewing court is "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

#### 1. Summary of Testimony

At the hearing, A.T. testified that she suffered from panic attacks and agoraphobia and that "large crowds and noises really get on . . . [her] anxiety." AR 52. A.T. said that that she would "for sure have a panic attack" if she was in a crowded or busy space or if she was by herself. AR 55. A.T. testified that, in the month prior to the July 1, 2021 hearing, she had been "having quite a few" and "over 20" panic attacks because her father had recently passed away. AR 56; *see also* AR 741 (treatment note from June 15, 2021 stating that A.T. "reports anxiety is very high" and "states she is having panic attacks").

13

In her applications for benefits, A.T. stated that she has difficulty dealing with stressful situations. *See* AR 343 ("[I handle stress] not well at all." "I am nervous around authority. I am scared of saying the wrong thing."). She also testified at the hearing that she used to have trouble with "angry customers" during her work as a manager in a fast-food restaurant. AR 52.

A.T. testified that on a good day, she could "do some cleaning, and maybe watch a little bit of TV." AR 52; *see also* AR 60 ("Good days would be me getting up, taking a shower, and getting dressed and taking my doggy out."). On a bad day, she said, "I just stay in bed . . . It's hard for me to clean and stuff. And I get distracted and sidetracked a lot." AR 53; *see also* AR 63 ("On my bad days, I kind of just sleep and I don't take care of my hygiene."). She reported that on a typical month, her bad days were "probably about 50 percent of the time" and that "[t]here's more bad than there is good." AR 57, 60.

A.T. said that her medications helped her "get motivated" and reduced her anxiety and panic attacks. AR 53. She also said that she "get[s] dizzy sometimes" from her medication and that they make it "hard for [her] to get up and down." AR 53-54; *see also* AR 61. A.T. testified that she had tried several different medications for her depression, but that sometimes "it makes me feel worse" or "it works for a little while. . . . [a]nd then, it doesn't work anymore—or I'll just start off feeling bad, but I want to give it a chance." AR 58.

The ALJ concluded that A.T.'s medically determinable impairments could be reasonably expected to cause the symptoms she described, but her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 29. He stated that "[t]he longitudinal record demonstrate[d]" that A.T.'s symptoms, "while waxing and waning to some degree, [had] generally improved and stabilized with treatment." AR 29.

### 2. Analysis

A.T. argues that the ALJ erred by discounting her subjective statements regarding her symptoms because those statements were inconsistent with a pattern of improvement reflected in her medical records. Dkt. No. 15 at 21. The Court agrees.

Consistent with his assessment of Ms. Whiting's and Ms. Caveza's opinions, the ALJ

14

1  interpreted A.T.'s medical records overall as showing a pattern of improvement over time. As
2  explained above, this conclusion, which relies on nearly identical evidence to the ALJ's
3  assessment of Ms. Whiting's and Ms. Caveza's treatment records and opinions, is not supported
4  by substantial evidence.
5        Moreover, many of the specific records that the ALJ cited as illustrative of a trend of
6  improvement do not in fact "constitute examples of a broader development." *See Attmore*, 827
7  F.3d at 877. For example, the ALJ cited records from November of 2018 and January, February,
8  April, and August of 2019 as illustrating a positive trend. AR 29 (citing AR 488, 499, 500, 504,
9  546). But he neglected to mention instances during the same period where A.T.'s symptoms
10 worsened. On February 19, 2019, A.T. told Ms. Whiting she was "having a really hard time,"
11 leading Ms. Whiting to prescribe her a new antidepressant (Pristiq). AR 500-01. A month later,
12 on March 14, 2019, A.T. reported experiencing suicidal ideation to Dr. LiWanPo. AR 512. The
13 ALJ also cited Dr. LiWanPo's treatment note from an August 22, 2019 visit as evidence of A.T.'s
14 improvement. AR 29 (citing AR 546). However, while the ALJ quoted a section of Dr.
15 LiWanPo's note saying that A.T.'s anxiety was "well controlled on current [medication] regime,"
16 *see* AR 548, he did not reference other sections of the note with more negative descriptions of
17 A.T.'s condition, *see* AR 546 ("There is continuation of initial symptoms [of anxiety] and
18 worsening of previously reported symptoms. The patient reports functioning as very difficult.").
19 The ALJ also did not discuss A.T.'s report that her symptoms had worsened during the period
20 shortly before the July 1, 2021 hearing. *See* AR 741 (June 15, 2021 treatment note); AR 56
21 (hearing testimony). Examined in context, the instances of stabilization and improvement cited by
22 the ALJ do not contradict or disprove A.T.'s subjective symptom testimony. *See Ferguson*, 2024
23 WL 1103364, at *4 ("[T]he ALJ must provide specific, clear, and convincing reasons which
24 explain why the medical evidence is *inconsistent* with the claimant's subjective symptom
25 testimony.") (emphasis in original).
26                           \* \* \*
27       In sum, the ALJ failed to provide specific, clear and convincing reasons for discounting
28 A.T.'s testimony about the "intensity, persistence and limiting effects" of her symptoms.

### C. Residual Functional Capacity

A.T. argues that the ALJ failed to properly determine her residual functional capacity. Dkt. No. 15 at 13-20. The Court agrees.

An ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). The ALJ must consider both the medical evidence and "descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms" provided by the claimant, family, friends, and other people. *Id.* § 404.1545(a)(3).

Here, because the ALJ erred in assessing the opinions of Ms. Whiting and Ms. Caveza and in assessing A.T.'s subjective testimony, his RFC finding is not supported by substantial evidence in the record. While the ALJ's RFC incorporated some limitations based on A.T.'s testimony and the opinions of her providers, the ALJ did not fully credit either, and the RFC does not reflect all of the limitations that A.T. claims. AR 28-31. In these circumstances, the Court concludes that to the extent the ALJ determined A.T.'s RFC based on an erroneous assessment of her limitations, the ALJ failed to properly determine A.T.'s RFC.

## IV. DISPOSITION

A.T. asks the Court to remand for payment of benefits, but this argument is not well-developed. *See* Dkt. No. 15 at 22. "An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (cleaned up). The Court may remand for an immediate award of benefits only where (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* at 1045. Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings, when the record as a whole creates serious doubt as to disability. *Id.*

16

This standard is not satisfied here. A final determination cannot be made absent a proper assessment of the medical opinions and testimony in the record. As discussed above, on remand the ALJ must reconsider: (1) the persuasiveness of Ms. Whiting's and Ms. Caveza's opinions based on the record as a whole; (2) the credibility of A.T.'s subjective testimony; and (3) A.T.'s RFC.

## V. CONCLUSION

Based on the foregoing, A.T.'s motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and this matter is remanded for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 25, 2024

_____
VIRGINIA K. DEMARCHI
United States Magistrate Judge

17